# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA FAYE NICHOLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-14-360-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ACTING Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

The claimant Virginia Faye Nichols requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on January 4, 1957, and was fifty-six years old at the time of the administrative hearing (Tr. 34, 88). She has a ninth grade education, and has worked as a convenience store clerk (Tr. 34, 51). The claimant alleges that she has been unable to work since March 15, 2012, due to a back injury, chronic skin disease, and arthritis (Tr. 116).

## Procedural History

On July 10, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 88-95). Her application was denied. ALJ Lantz McClain conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 16, 2013 (Tr. 18-24). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 22). The ALJ concluded that the claimant was not disabled because she could return to her past relevant work (Tr. 24).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) evaluate all of her impairments at step 4, (ii) evaluate the medical and nonmedical source evidence, and (iii) assess her credibility. Because the Court agrees with the claimant's first contention that the ALJ failed to properly evaluate the claimant's nonsevere mental impairments, the decision of the Commissioner must be reversed and the case remanded for further proceedings.

The ALJ found the claimant had the severe impairments of degenerative disc disease, osteoarthritis of the hips, and diabetes mellitus, as well as the nonsevere impairments of psoriasis, recent right foot fracture, depression, and anxiety (Tr. 20). The medical evidence relevant to this appeal reveals that the claimant established primary care at Clinico Rural Health Clinic on August 9, 2012, and was largely treated by Nurse Practitioner Kerri Ellis (Tr. 240-48, 284, 286, 288). Ms. Ellis noted the claimant had a nervous affect and was sporadically tearful during her original appointment, and diagnosed the claimant with, *inter alia*, depression and anxiety, prescribed psychotropic medication, and recommended a referral for a psychosocial evaluation (Tr. 248). On August 21, 2012, the claimant established care at Psychiatric Associates of Tulsa, where she was treated by a nurse practitioner (whose name is illegible) and Dr. David Shadid, a psychiatrist (Tr. 269-74). The nurse practitioner noted some improvement with the claimant's continued medication, but also recorded persistent anxiety and/or depression, as well as Global Assessment of Functioning (GAF) scores ranging from 50-63 (Tr. 269-74). Dr. Shadid's treatment notes are largely illegible (Tr. 300-02, 310-11). What is

legible is a note from April 24, 2013, in which he stated her mood was euthymic, her affect was normal, and he assigned a GAF score of 70, as well as a note from July 31, 2013, in which he noted the claimant's mood was euthymic, her affect was normal, and he recommended she continue with her medications (Tr. 300-301, 311).

Consultative examiner Dr. Michael Morgan conducted a mental status examination of the claimant on September 5, 2012 (Tr. 192-95). He found that the claimant experienced ongoing symptoms of anxiety and that her mood was affected by transient symptoms of depression (Tr. 193). He noted the claimant's mood was euthymic and that she was well focused and attentive during the examination (Tr. 194). Dr. Morgan's diagnostic impression was generalized anxiety disorder and major depressive disorder, recurrent, in partial remission, along with a current GAF score of 61-65 (Tr. 195). Dr. Morgan's prognosis was that with the addition of psychotherapy, the claimant could achieve a higher level of functioning within 1-2 years (Tr. 195).

State reviewing physician Dr. Julian Lev completed a Psychiatric Review Technique form on October 3, 2012 (Tr. 202-15). Dr. Lev found that the claimant's mental impairments consisted of major depressive disorder, recurrent, in partial remission, and generalized anxiety disorder, both of which were nonsevere (Tr. 202, 205, 207). As a result, Dr. Lev found that the claimant was mildly impaired in the functional categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace (Tr. 212). Dr. Lev's notes mention Dr. Morgan's consultative examination, but do not mention any of the treatment notes from Dr. Shadid or the nurse practitioner at Psychiatric Associates of Tulsa (Tr. 214).

Additionally, the claimant's husband prepared a Third Party Function Report on July 15, 2012 (Tr. 123-130). He stated the claimant was depressed because of her pain, forgets when bills are due, and forgets her medical appointments (Tr. 123, 126-27). He noted the claimant was a nervous person and that her anxiety and depression affect her memory, concentration, understanding, as well as her ability to complete tasks and follow instructions (Tr. 128). He stated the claimant could pay attention for 5 minutes and that she does not finish what she starts (Tr. 128). He also stated the claimant had a fear of dying and a fear that her feet will need to be amputated (Tr. 129-130).

At the administrative hearing, the claimant testified she experiences pain in her lower back, hips, and feet (Tr. 35). She stated that her pain medications and lying down with her feet raised help her pain and that she spends about half of her day lying down (Tr. 36-37). She testified her depression is due to her chronic pain (Tr. 45). She further testified the psychotropic medications she takes for depression and anxiety are effective (Tr. 46).

In his written opinion, the ALJ discussed the claimant's testimony, mentioned the Third Party Function Report submitted by the claimant's husband, and summarized most of the medical evidence. The ALJ summarized the notes from Dr. Morgan's consultative examination at step two in the context of the severity of the claimant's depression and anxiety, but did not mention the treatment notes from Psychiatric Associates of Tulsa anywhere in his opinion (Tr. 21). At step four, the ALJ gave substantial weight to Dr. Lev's opinion, finding it was well supported by the overall evidence of record, but provided no further discussion of the evidence related to the claimant's mental

impairments (Tr. 23). In addressing the Third Party Function Report, the ALJ summarized some of the statements, including that the claimant forgets to pay bills and has a fear that her feet will be amputated, but found the report was "inconsistent with the medical evidence of record, demonstrating only mild psoriasis symptoms" (Tr. 23).

Because the ALJ found that the claimant had severe impairments, any failure to find her mental impairments severe at step two is considered harmless error because the ALJ is still required to consider the effects of these impairments at all steps of the sequential evaluation, and to account for them in formulating the claimant's RFC. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error was not harmless, because although the ALJ discussed all of the claimant's severe and nonsevere medically determinable impairments individually at step two, he failed to consider all of her impairments, singly *or* in combination, when formulating the claimant's RFC at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were not severe, she gave those impairments no further

consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Additionally, Social Security Ruling 06-03p (SSR 06-03p) provides the relevant guidelines for the ALJ to follow in evaluating "other source" opinions from nonmedical sources who have not seen a claimant in their professional capacity. *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 (Aug. 9, 2006). SSR 06-03p states, in part, that other source opinion evidence, such as those from spouses, parents, friends, and neighbors, should be evaluated by considering the following factors: (i) nature and extent of the relationship, (ii) whether the evidence is consistent with other evidence, and (iii) any other factors that tend to support or refute the evidence. Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *5-6. Here, the ALJ discredited the husband's Third Party Function Report because the medical evidence demonstrated mild psoriasis, but failed to acknowledge the rest of the report which provides some support for the evidence related to her nonsevere mental impairments. He thus wholly failed to evaluate it in accordance with the factors set out in SSR 06-03p.

Because the ALJ failed to properly account for *all of* the claimant's impairments at step four, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence. If such analysis on remand results in any

adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 3rd day of March, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**